**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 20–cr-30124-SMY** |
| | ) | |
| | ) | |
| **MARCUS BUSH,** | ) | |
| | ) | |
| **Defendant.** | ) | |

# ORDER

**YANDLE, District Judge:**

Defendant Marcus Bush is charged with one count of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Doc. 1). He moves to suppress evidence recovered after what he contends was an illegal impoundment and inventory search of his motor vehicle by the Madison City Police Department (Doc. 21). The Government opposes the Motion (Doc. 26). The Court held an evidentiary hearing on March 3, 2021 and March 8, 2021. For the following reasons and those stated on the record, Defendant's Motion to Suppress is **GRANTED**.

## Factual Background

The following are the Court's factual findings from the evidence presented at the evidentiary hearing and submitted with the parties' briefs: On May 28, 2020, Madison City Dispatch notified Detective Kyle Graham of a license plate reader hit involving a 2015 Black Kia Optima that was suspected of being involved in two previous incidents of aggravated fleeing and eluding (Docs. 21-1, 21-2). The two previous incidents occurred on December 14,

2019 and May 13, 2020. *Id*. Detective Graham observed the vehicle parked at 1107 7th Street in Venice, IL – the residence linked to the vehicle's registration. *Id*.; Doc. 33, p. 30. Detective Graham observed Bush exit the vehicle and walk inside the residence (Doc. 30, p. 30). Detective Graham pulled his squad car in front of the vehicle and notified other units. *Id*. He testified that his intention was to have the vehicle towed and impounded for seizure purposes. *Id*. at p. 31. Bush approached the vehicle and attempted to gain access through the passenger door. *Id*. at 34. Detective Graham advised Bush "that the vehicle was going to be towed and possibly seized due to the fleeing situation." *Id*. at 34. Detective Graham then placed himself between Bush and the passenger door. *Id*. Bush informed Detective Graham that the car was running and the keys were in the ignition. *Id*. Bush then walked away in the direction of Lincoln St. *Id*.

Officer Crenshaw and Officer Gatlin arrived on the scene to provide back up to Detective Graham for his impoundment of Bush's car. *Id*. Officer Gatlin and Detective Graham performed a tow inventory of Bush's car. *Id*. at p. 41. During the inventory, the officers found a box of 80-count Food Sense sandwich baggies and a bag of "Lucky 777" distribution baggies in the driver's side door of the vehicle (Doc. 21-1). A black digital scale was found in the center console of the vehicle. *Id*. Officer Gatlin took photos of the items and placed them in evidence envelopes. *Id*. In the passenger seat, under a gray windbreaker jacket, Detective Graham located a XDs-9 pistol (Serial #S3937307). *Id*. The pro mag magazine contained (3) fmj rounds and (6) hollow point rounds. *Id*. The pistol and magazine were secured in an evidence envelope. *Id*. During an inventory of the trunk there were several bags of clothes and a Springfield XDs pistol belt clip holster. *Id*. The item was also photographed and secured into an evidence envelope. *Id*. At one point, Bush's grandmother came outside

the residence and asked for the keys to the vehicle (Doc. 33, p. 35). Another family member also requested the keys. *Id*. Both requests were denied. *Id*.

The items seized were transported to the Madison City Police Department and placed into the evidence tracking system (Doc. 21-1). Andy's Towing towed the vehicle to the Madison City Police Department where it was placed in evidence storage. *Id*.

The Madison City Police Department procedures for inventory searches provides that the State's Attorney's Office should be consulted in inventory searches of property and such searches should be conducted under the following circumstances:

> a. When the vehicle itself is a crime scene.
>
> b. A stolen vehicle that has been recovered after the reporting agency has informed our Department of their intent not to process the vehicle.
>
> c. The vehicle is impounded pursuant to a custodial arrest in accordance with department policy.
>
> d. An inventory search should never be conducted when circumstances would dictate the requirement that a warrant be obtained.
>
> e. Officers should note that towing a vehicle to the police station or an otherwise secure area may negate the ability to search without a warrant.

(Doc. 26-2, p. 4). Detective Graham testified that he impounded Bush's vehicle pursuant to subsections (a) and (c) of the policy because the vehicle "was directly correlated to the crime of aggravated fleeing and eluding, so that vehicle would be a crime scene itself and evidence of that crime." (Doc. 33, pp. 69-70).

Detective Graham completed a Madison City Police Department vehicle tow report on May 28, 2020 (Doc. 21-6). The stated reason for the tow was "arrest". *Id*. He also completed a Notice of Seizure for Forfeiture on May 28, 2020, notifying Bush that approximately $780.00

and a grey Samsung flip cellular phone had been seized for purposes of asset forfeiture (Doc. 21-4, p. 3). The line on the form to list any vehicles seized for forfeiture was left blank. *Id*.

On June 11, 2020, Detective Graham completed a Notice of Preliminary Review and Receipt of Property Seized for Forfeiture notifying Bush that his vehicle had been seized for purposes of asset forfeiture (Doc. 21-4). A Notice of Pending Forfeiture form was signed by the Assistant State's Attorney on July 17, 2020, indicating that the vehicle had been seized by law enforcement officers on June 11, 2020 (Doc. 21-4, p. 2).

## **Discussion**

Bush contends that the officers lacked a substantive basis for the seizure and search of his vehicle because he was not in custody or under arrest at the time of the search and the officers did not have probable cause to justify a warrantless search of the vehicle. The Government argues that the vehicle was lawfully seized as contraband subject to forfeiture, or alternatively, as abandoned property.

As a general proposition, and subject to several exceptions, police may conduct searches only pursuant to a valid warrant. One such exception allows police to conduct an "inventory" of the contents of a car when they validly impound the vehicle. *Colorado v. Bertine,* 479 U.S. 367, 371 (1987); *South Dakota v. Opperman,* 428 U.S. 364, 367–68, (1976). In assessing the validity of an inventory search, "the decision to impound (the 'seizure') ... is properly analyzed as distinct from the decision to inventory (the 'search')." *United States v. Duguay,* 93 F.3d 346, 351 (7th Cir. 1996). Thus, for an inventory search to be valid, the impoundment of the vehicle must be valid. *U.S. v. Jensen,* 169 F.3d 1044, 1048 (7th Cir. 1999).

An impoundment must either be supported by probable cause or be consistent with the police role as "caretaker" of the streets and completely unrelated to an ongoing criminal investigation. *Id.* at 370, n. 5; *Duguay,* 93 F.3d at 352. The decision to impound must also be made according to standard police inventory policies and procedures. *Duguay,* 93 F.3d at 351. The policy need not be written but must be firmly established. *Duguay,* 93 F.3d at 351. These rationales are distinct from the permissible reasons for conducting a routine inventory of the contents of an impounded vehicle, which are "to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger." *Bertine,* 479 U.S. at 372. The requirement for standardized impoundment and search procedures are designed to prevent situations in which police use an inventory search as a "ruse for general rummaging in order to discover incriminating evidence." *Florida v. Wells,* 495 U.S. 1, 4 (1990).

Here, the Government maintains that civil forfeiture laws justified the seizure and subsequent search of Bush's vehicle. Although Detective Graham testified that he made the decision at the scene to seize Bush's vehicle for civil forfeiture purposes, his testimony is belied by the relevant documentation. Specifically, Detective Graham completed several police forms on May 28, 2020 documenting the seizure and search of Bush's vehicle. He did not use the phrase "civil forfeiture" in his May 28, 2020 report detailing the seizure of Bush's vehicle. And while Detective Graham completed a Notice of Seizure of Forfeiture on that date, the form only pertains to Bush's phone and cash. A line on the form on which to list any vehicles seized for forfeiture was left blank. It was not until June 11, 2020 – well after Bush's vehicle was seized and searched – that Detective Graham completed and signed a form entitled "Notice of Preliminary Review and Receipt of Property Seized for Forfeiture" for the vehicle.

On the form, Detective Graham indicated that the Madison City Police Department seized Bush's vehicle on June 11, 2020 for purposes of asset forfeiture. The June 11, 2020 seizure date was conceded on the Notice of Pending Forfeiture signed by the State's Attorney on July 17, 2020.

Based on the forgoing evidence, the Court concludes that there was no constitutionally legitimate rationale for seizing Bush's vehicle on May 28, 2020. There was no probable cause to seize the vehicle – the vehicle was not seized for purposes of civil forfeiture. Rather, the Court finds that justification was created after the fact to rationalize the impoundment. In that vein, Detective Graham testified that he believed the vehicle was involved in two previous fleeing and eluding and that the vehicle was the crime scene itself and was evidence of a crime. An impoundment, however, must either be supported by probable cause or be consistent with the police role as "caretaker" of the streets and ***completely unrelated to an ongoing criminal investigation***. Therefore, Detective Graham's belief that the vehicle was evidence of a crime was not justification for the seizure.

There was also no community caretaker purpose served by impounding Bush's vehicle. The Court rejects the Government's argument that Bush abandoned the vehicle and fled the scene. Bush's vehicle was parked outside of his residence. He did not abandon the vehicle but was informed that his car would be towed and was actively prevented from occupying the car. Nor did Bush "flee" the scene as the Government alleges. He was not under arrest and there was no indication that he was not free to leave. Simply put, the evidence does not support a finding that the impoundment of Bush's vehicle was consistent with the police role as "caretaker" of the streets and completely unrelated to the ongoing criminal investigation of his alleged previous fleeing and eluding.

That said, even if the vehicle was properly seized for civil forfeiture purposes, the search of the vehicle was unconstitutional. An inventory search is lawful if (1) the individual whose possession is to be searched has been lawfully arrested, and (2) the search is conducted as part of the routine procedure incident to incarcerating an arrested person and in accordance with established inventory procedures. *United States v. Jackson,* 189 F.3d 502, 508–09 (7th Cir. 1999). Bush was not arrested on March 28, 2020 nor was the search in accordance with established inventory procedures. The Madison City Police Department has established written policies setting forth the circumstances under which a warrantless inventory search may be conducted: A warrantless inventory search may be conducted when (a) the vehicle itself is a crime scene; (b) it is a stolen vehicle that has been recovered; or (c) the vehicle is impounded pursuant to a custodial arrest in accordance with department policy. None of the stated circumstances justifying a warrantless search as promulgated in the Madison City Police Department policy were present in this case. While the Government cites *Duguay,* 93 F.3d at 351 and *United States v. Lozano*, 171 F.3d 1129, 1132 (7th Cir. 1999) for the proposition that a warrantless inventory search conducted pursuant to established custom and practice may be constitutional, and asserts that it was the custom and practice of Madison police officers to conduct such a search anytime a vehicle is impounded, a custom and practice that is in direct conflict with established written policy cannot be the basis for a finding of constitutionality.

**Conclusion**

For the foregoing reasons, the Court finds that both the seizure of Defendant's vehicle on May 28, 2020 and the subsequent search violated his Fourth Amendment rights and were unconstitutional. Accordingly, Defendant Marcus Bush's Motion to Suppress (Doc. 21) is

**GRANTED** and any evidence discovered as a result of the inventory search of the vehicle must be suppressed.

**IT IS SO ORDERED.**

**DATED: April 19, 2021**

**STACI M. YANDLE**
**United States District Judge**